IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JASON VAN DUSEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CIV-06-295-M |
| | ) | |
| MIKE MULLIN, Warden, OSP, and | ) | |
| THE ATTORNEY GENERAL OF | ) | |
| THE STATE OF OKLAHOMA, | ) | |
| DREW EDMONDSON, | ) | |
| | ) | |
| Respondents. | ) | |

## <u>REPORT AND RECOMMENDATION</u>

The Petitioner, Mr. Jason Van Dusen, is a state inmate requesting an evidentiary hearing and a writ of habeas corpus.  The Court should deny both requests.

## BACKGROUND

I.   <u>Facts</u>

In June 2002, the Petitioner lived with his girlfriend, Ms. Deborah Coffey, and her three minor children.  *See* II Transcript of Jury Trial at p. 288, *State v. Vandusen*, Case No. CF-2002-55 (Blaine Co. Dist. Ct. Sept. 9, 2003) ("II Trial Transcript").  One of the children, B.S., told social worker Kelli Grove that:

- Mr. Van Dusen "would touch [B.S.]" and "insert[] his finger into [B.S.'s] vagina,"[1] and

---

[1]    *See* II Trial Transcript at pp. 216, 218, 223, 228.

● the Petitioner had put his "private parts" in B.S.'s "butt."[2]

B.S. stated that these acts sometimes occurred on or under a leopard-print blanket or a "different color[ed]" blanket. *Id.* at p. 226. Two such blankets were found in the household, located on the minor girls' beds. *See id.* at pp. 226-27. These blankets were taken into custody and tested for seminal fluid. *See id.* at pp. 314-16. The test on the leopard-print blanket proved negative; however, the Petitioner's seminal fluid appeared on the multi-colored blanket. *See id.* at pp. 319-20, 335-36. Further testing also revealed a female secretion, but B.S. was eliminated as the source of that fluid. *See id.* at pp. 339-40.

The State charged Mr. Van Dusen with rape of a child and rape by instrumentation. *See* III Transcript of Jury Trial at p. 375, *State v. Vandusen*, Case No. CF-2002-55 (Blaine Co. Dist. Ct. Sept. 10, 2003) ("III Trial Transcript"). After a trial, the jury found Mr. Van Dusen guilty on both counts[3] and recommended sentences of 75 years imprisonment on each charge.[4] The trial court entered judgment accordingly and ordered the Petitioner's sentences to run consecutively. Transcript of Proceedings, *State v. Vandusen*, Case No. CF-2002-55 (Blaine Co. Dist. Ct. Oct. 31, 2003).

---

[2]     *See* II Trial Transcript at pp. 232-33.

[3]     III Trial Transcript at pp. 415-16.

[4]     III Trial Transcript at pp. 434-35.

II.    Procedural History

Mr. Van Dusen appealed, and the Oklahoma Court of Criminal Appeals ("OCCA") upheld the conviction.  Summary Opinion at pp. 1-2, *Van Dusen v. State*, Case No. F-2003-1316 (Okla. Crim. App. Oct. 13, 2004) ("OCCA Opinion on Direct Appeal").  However, the appeals court modified the sentences to 30 years on both counts on grounds that the prosecutor had improperly injected the possibility of parole into the second stage closing argument.  *Id.*

The Petitioner sought post-conviction relief[5] in Blaine County District Court. Petitioner's Points and Autorities [sic] a Supplement to Petitioners [sic] Post Convition [sic] Writ of Habeas Corpus 12 Okla. St. Ann 1342, *Van Dusen v. Mullin*, Case No. CV-2005-170 (Blaine Co. Dist. Ct. certified Nov. 2, 2005).  The state district court denied Mr. Van Dusen's request for relief,[6] and the OCCA affirmed.[7]

The present action followed.

---

[5]    Mr. Van Dusen filed the application as a habeas petition, but the court construed it as a request for post-conviction relief.  *See* Order Affirming Denial of Post Conviction Relief at p. 1, *Van Dusen v. State*, Case No. PC-2005-1182 (Okla. Crim. App. Feb. 14, 2006).

[6]    Order at pp. 1-3, *VanDusen v. Mullins*, Case No. CV-2005-170 (Blaine Co. Dist. Ct. Nov. 8, 2005).

[7]    Order Affirming Denial of Post Conviction Relief, *Van Dusen v. State*, Case No. PC-2005-1182 (Okla. Crim. App. Feb. 14, 2006).

STANDARD FOR HABEAS RELIEF

The applicable standard turns on whether the OCCA has addressed the merits of the claim. If not, the federal district court exercises its independent judgment on the claim. *See*, *e.g.*, *Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002). If the OCCA did rule on the merits, the federal district court bears a "secondary and limited" role,[8] as "only the most serious misapplications of Supreme Court precedent will be a basis for relief under [28 U.S.C.] § 2254."[9] In these circumstances, habeas relief is unavailable unless the state court's legal ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (2000).

A decision is "contrary to . . . clearly established Federal law" only if the state court had:

- "applie[d] a rule that contradict[ed] the governing law set forth in [Supreme Court] cases," or

- "confront[ed] a set of facts that [were] materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrive[d] at a result different from [Supreme Court] precedent."

*Williams v. Taylor*, 529 U.S. 362, 405-406 (2000) (citation omitted).

---

[8]     *See Castro v. Ward*, 138 F.3d 810, 815 (10th Cir. 1998).

[9]     *Maynard v. Boone*, __ F.3d __, 2006 WL 3030553, Westlaw op. at 4 (10th Cir. Oct. 26, 2006).

A similar test governs the objective reasonableness of the state court's legal rulings.

The Tenth Circuit Court of Appeals recently explained:

> [A] decision is "objectively unreasonable" when most reasonable jurists
> exercising their independent judgment would conclude the state court
> misapplied Supreme Court law.  It is not enough that the decision is clearly
> wrong or that the reviewing court would have reached a contrary decision.  In
> other words, . . . the state court decision must be "at such tension with
> governing U.S. Supreme Court precedents, or so inadequately supported by the
> record, or so arbitrary as to be unreasonable."

*Maynard v. Boone*, __ F.3d __, 2006 WL 3030553, Westlaw op at 4 (10th Cir. Oct. 26, 2006)

(citation omitted).

## THE RESPONDENTS' DEFENSE OF PROCEDURAL BAR

Holding that Mr. Van Dusen had waived the claims on appeal, the state courts refused

to consider many of the claims involving prosecutorial misconduct and all of the allegations

concerning ineffective assistance of counsel, suppression of evidence, insufficient evidence,

and cumulative error.  Order at pp. 1-3, *VanDusen v. Mullins*, Case No. CV-2005-170

(Blaine Co. Dist. Ct. Nov. 8, 2005); Order Affirming Denial of Post Conviction Relief, *Van

Dusen v. State*, Case No. PC-2005-1182 (Okla. Crim. App. Feb. 14, 2006).  For that reason,

the Respondents urge the Court to find the Petitioner's claims procedurally barred.  Response

to Petition for Writ of Habeas Corpus at pp. 3-8 (May 1, 2006).  The Court need not address

the issue of procedural default because the claims are invalid on the merits.  *See Miller v.

Mullin*, 354 F.3d 1288, 1297 (10th Cir. 2004) (*per curiam*) (declining to address issues

involving procedural default "[i]n the interest of judicial economy" "'because the case may be more easily and succinctly affirmed on the merits.'" (citations omitted)).

INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his first ground for relief, Mr. Van Dusen alleges that his trial attorney was constitutionally ineffective. Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus by a Person in State Custody at p. 6 (Mar. 20, 2006). According to Mr. Van Dusen, the attorney had improperly:

- waived the preliminary hearing and opening statement,

- failed to adequately investigate and present the Petitioner's theory of defense,

- failed to call relevant lay and expert witnesses,

- failed to effectively cross-examine witnesses,

- stipulated to and emphasized damaging evidence, and

- failed to object to prosecutorial misconduct.

Petitioner's Points and Authorities a Supplement to Petitioner's Post Conviction Writ of Habeas Corpus at pp. 8-14 (Mar. 20, 2006) ("Petitioner's Brief in Support"). All of the claims are invalid.

I.     Standard for Relief for Ineffective Assistance at Trial

To establish ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient and prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 690-91 (1984). Counsel's performance is deficient if the representation falls

below an objective standard of reasonableness. *See id.* at 690. Prejudice involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

II.    Waiver of the Preliminary Hearing and Opening Statement

Mr. Van Dusen claims that:

- "[n]o reasonable trial lawyer would try a case by waiving [the] preliminary [hearing] . . . with a client that has claims of innocence and set-up,"[10] and

- the attorney had improperly "failed to present [an] opening statement."[11]

The Court should reject these challenges.

A.    Preliminary Hearing

The Petitioner and his attorney, Mr. Irven Box, appeared in court and waived the right to a preliminary hearing. Transcript of Proceedings at pp. 2-4, *State v. Vandusen*, Case No. CF-2002-55 (Blaine Co. Dist. Ct. Sept. 16, 2002). At that hearing, Mr. Van Dusen stated that:

- he was "satisfied with the services of [his] attorney,"

- they had discussed the advantages and disadvantages of waiver of the preliminary hearing,

- Mr. Box had not forced or even told him to waive the hearing, and

- the decision to waive the hearing had been made by Mr. Van Dusen.

*Id.*

---

[10]    Petitioner's Brief in Support at p. 11.

[11]    Petitioner's Brief in Support at p. 13.

This testimony confirms that Mr. Box's conduct was not constitutionally deficient, and the Petitioner has not alleged any prejudice from waiver of the hearing.[12]   For these reasons, Mr. Van Dusen has not established ineffective assistance of counsel for the waiver of his preliminary hearing.

B.     Opening Statement

Mr. Box did not make an opening statement.  This decision could not constitute ineffective assistance because:

- waiver of an opening statement is considered "tactical,"[13] and

- Mr. Van Dusen has not identified prejudice from the lack of an opening statement.

For both reasons, the lack of an opening statement would not render the legal representation ineffective.

---

[12]     *See Burton v. Martin*, 161 F.3d 17, 1998 WL 694531, Westlaw op. at 1 n.1 (10th Cir. Oct. 6, 1998) (unpublished op.) (rejecting a habeas claim involving ineffective assistance of trial counsel on a disputed waiver of a preliminary hearing based on a failure by the petitioner "to demonstrate any prejudice" (citation omitted)); *accord Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (rejecting a claim that counsel was ineffective for waiver of the preliminary hearing in part because the petitioner "ha[d] not shown prejudice in the requisite degree").

[13]     *See*, *e.g.*, *Nguyen v. Reynolds*, 131 F.3d 1340, 1350 (10th Cir. 1997) ("Defense counsel's failure to make an opening statement was nothing more than a tactical decision that did not adversely affect [the petitioner]."); *United States v. Miller*, 907 F.2d 994, 1000 (10th Cir. 1990) (stating that a strategic decision to eschew an opening statement, without more, does not constitute ineffective assistance of counsel).

III.    Alleged Failure to Adequately Investigate and Present Mr. Van Dusen's Proposed
        Defense

According to Mr. Van Dusen, Mr. Box also failed to adequately investigate and present the theory of a "set-up."  Petitioner's Brief in Support at pp. 8, 10, 12.  This claim should be rejected.

Mr. Van Dusen's theory of defense involves a conspiracy between the undersheriff and social worker.  *Id.* at p. 8.  At trial, Mr. Box took a different approach.  There the attorney argued that the State had failed to prove all the elements and that inconsistencies in the evidence should create a reasonable doubt about the Petitioner's guilt.   III Trial Transcript at pp. 386-402 (closing argument).  This strategy was reasonable.

Claims concerning "what defense theory will be most plausible" involve challenges "to trial strategy and tactics."  *Boyd v. Ward*, 179 F.3d 904, 917 (10th Cir. 1999).  And "[a] strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill chosen that it permeates the entire trial with obvious unfairness."  *Nguyen v. Reynolds*, 131 F.3d 1340, 1349 (10th Cir. 1997) (citation omitted).  Thus, "[f]or counsel's actions to rise to the level of constitutional ineffectiveness, his strategic decisions must have been 'completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy.'"  *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (citations omitted).

Mr. Van Dusen alleges a "set-up," but provides no motive other than the "vindictiveness" of the social worker and undersheriff.  *See* Petitioner's Brief in Support,

*passim.*  The Petitioner does point to testimonial inconsistencies and lack of specific evidence as proof of a "set-up."  *See id.* at pp. 9-10.  For example, Mr. Van Dusen argues that:

- Ms. Coffey testified that she had not seen signs of abuse and that B.S. had been a "volatile" child,

- a physician's assistant found no signs of bruising, swelling, tearing, or trauma on B.S., and

- B.S.'s DNA was not found on the blanket with the Petitioner's DNA.

*See id.*

Mr. Box's theory utilized these inconsistencies,[14] but focused on the existence of reasonable doubt rather than a "set-up."[15]  The attorney's strategic decision was reasonable and cannot be considered "ineffective."  *See Haley v. Armontrout*, 924 F.2d 735, 740 (8th Cir. 1991) (upholding denial of a habeas claim involving trial counsel's failure to present evidence of "framing," as the decision to forego the testimony had been reasonable and was not prejudicial).

---

[14]  The trial attorney highlighted the inconsistencies during cross-examination.  *See* II Trial Transcript at pp. 245-46 (normal physical findings), pp. 297-99 (B.S.'s personality and lack of signs of abuse); p. 340 (nonexistence of B.S.'s DNA on the blanket), pp. 355-56 (no physical findings only two days after the alleged rape).  Mr. Box then discussed the lack of evidence in his closing argument.  *See* III Trial Transcript at pp. 388-95.

[15]  While the attorney did not argue a "set-up," he did suggest that:

- B.S. might have falsified the allegations based on anger toward the Petitioner, and

- the victim's allegation could have resulted from coercion during her interview.

II Trial Transcript at pp. 283-85; III Trial Transcript at pp. 392-93.  This line of inquiry led the prosecutor to ask the jury: "What does the defense want [you to] believe, . . . [t]his is all a big conspiracy?"  III Trial Transcript at p. 402.

IV.   <u>Failure to Call Witnesses</u>

The Petitioner also complains about his attorney's decision to forego the use of witnesses in his case-in-chief.   *See infra* pp. 11-15.   The Court should reject these claims.

A.   <u>Lay Witnesses</u>

The Petitioner contends that his trial counsel had rendered ineffective assistance by a failure to call Barbie Larson, Jessica Denton, B.S.'s sister, and a teacher as witnesses. Petitioner's Brief in Support at p. 9.   Ms. Larson, a former babysitter, would have allegedly testified that the victim was a "volatile child" and denied observation of any signs of abuse. *Id.*   According to Mr. Van Dusen, the remaining witnesses would have "collaborate[d] [sic] the alleged victim's personality."   *Id.*

"[T]he decision of what witnesses to call is a tactical one within the trial counsel's discretion."   *Minner v. Kerby*, 30 F.3d 1311, 1317 (10th Cir. 1994).   The Petitioner has not established prejudice from Mr. Box's tactical choice.

For example, the jury had already heard:

- B.S.'s mother testify that she had given a written statement describing the alleged victim as a "volatile child,"[16] and

- the mother state that she had not seen signs of her children being hurt.[17]

Thus, testimony from Barbie Larson, Jessica Denton, B.S.'s sister, and a teacher would have been cumulative, and the Petitioner cannot show a reasonable probability that the outcome

---

[16]   II Trial Transcript at pp. 296-97.

[17]   II Trial Transcript at pp. 297-98.

would have been different if the trial attorney had used these individuals. *See Knighton v. Mullin*, 293 F.3d 1165, 1179 (10th Cir. 2002) ("evidence which is essentially cumulative to that already presented to [the] jury will not be sufficient to establish reasonable probability [the] jury would have reached different result" (citing *Humphreys v. Gibson*, 261 F.3d 1016, 1021 (10th Cir. 2001))).

B.    Expert Witnesses

Mr. Van Dusen also blames his attorney for the failure to call a psychologist or medical expert.  Petitioner's Brief in Support at pp. 10-11.  Mr. Box was not constitutionally ineffective in this regard.

Testimony from a Psychologist

According to the Petitioner, an "independent psychologist" should have been called to testify about the social worker's interview with B.S.  *Id.* at p. 10.  Mr. Van Dusen describes this interview as a "length[y] interrogation[] that would have broke [sic] most adults."  *Id.*

Apparently, the Petitioner assumes that a psychologist would have adopted the theory of psychological coercion.  But "[w]hen an ineffective assistance claim centers on a failure to investigate and elicit testimony from witnesses, the petitioner must 'demonstrate, with some precision, the content of the testimony they would have given at trial.'"  *Martinez v. Tafoya*, 13 Fed. Appx. 873, 877 (10th Cir. July 17, 2001) (unpublished op.) (quoting *Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir. 1990)).  The Petitioner's allegation

involves conjecture, as Mr. Van Dusen has not provided any evidence that a psychologist would have testified in that manner.[18]  *See Moore v. Reynolds*, 153 F.3d 1086, 1112 (10th Cir. 1998) (rejecting a habeas petitioner's claim that the trial court should have appointed experts when the "arguments as to what the requested experts might have said [were] entirely speculative"); *see also Tafoya v. Tansy*, 9 Fed. Appx. 862, 871 (10th Cir. May 24, 2001) (unpublished op.) (the petitioner's "'[s]peculation about what an expert could have said is not enough to establish prejudice [for purposes of demonstrating ineffective assistance of counsel]'" (citation omitted)).  Under the circumstances, the Court cannot hold that the trial attorney was constitutionally ineffective for failure to call a psychologist to testify.  *See Bugh v. Mitchell*, 329 F.3d 496, 513-15 (6th Cir. 2003).[19]

---

[18]    During cross-examination and closing argument, Mr. Box clearly focused on the possibility that the social worker's technique had led to a false allegation.  *See* II Trial Transcript at pp. 241-42, 249-51 (cross-examination of Kelli Grove); III Trial Transcript at pp. 392-93 (closing argument).

[19]    In *Bugh v. Mitchell*, the petitioner was convicted on a charge involving rape of a four-year-old girl.  *See Bugh v. Mitchell*, 329 F.3d at 499.  In habeas proceedings, the petitioner claimed that his trial counsel was ineffective for failure to pursue an independent psychological examination of the girl to determine whether she had fantasized the allegations or been programmed to allege abuse. *See id*. at 513.  The federal appeals court rejected the claim, concluding that trial counsel was not ineffective and that the failure to pursue the psychological examination was not prejudicial.  *Id*. at 514-15.  In part, the court reasoned that the decision was strategic because the attorney "did not know whether the results of an exam would have been unfavorable to the defense." *Id*. at 514 & 514 n.5.  In addition, the appellate court reasoned that the lack of an independent psychological examination was not prejudicial because other evidence would have prevented a reasonable probability of a different verdict with an independent psychological examination of the girl.  *Id*. at 515.

<u>Testimony from a Medical Expert</u>

The Petitioner also claims that three physicians had reached different conclusions and that Mr. Box had failed to:

- refute Dr. O'Quin's "obviously biased" explanation for the lack of physical trauma, and

- call Dr. Deborah Lowen as a witness.

Petitioner's Brief in Support at p. 11.

Dr. Michael O'Quin videotaped his physical examination of B.S. *See* II Trial Transcript at p. 351. The physician then sent the video to Dr. Lowen, a specialist in sexual abuse examinations. *See id.* at pp. 351-52. After reviewing the tape, Dr. Lowen found that the "hymenal tissue" was "minimal," but added that the hymen might have "folded inferiorly." *Id.* at pp. 357-58. Dr. Lowen wrote that an examination in "the prone knee-chest position [would be] needed to determine if in fact this child ha[d] a true loss of hymenal tissue." *Id.* at p. 358. Dr. O'Quin testified that he did not repeat B.S.'s examination because after two previous examinations, he was confident that the hymenal tissue had "change[d]." *Id.* at pp. 358-61.

The Petitioner argues that his attorney should have called Dr. Lowen as a witness. *See supra* p. 12. This argument is invalid for three reasons.

First, the jury heard Dr. Lowen's opinion when her letter was read into evidence. *See* II Trial Transcript at p. 357 (Dr. Lowen's entire letter read into evidence); *see also* Exhibits

to Transcript, State's Exhibit 14 at p. 2, *State v. Vandusen*, Case No. CF-2002-55 (Blaine Co.

Dist. Ct. file stamped Jan. 21, 2004) ("Exhibits to Transcript").

Second, Dr. Lowen did not refute Dr. O'Quin's findings.  Indeed, Dr. Lowen

indicated that she had also noticed "minimal hymenal tissue," but could not confirm the

results. *See supra* p. 14.

Finally, based on Dr. Lowen's letter, the trial attorney rigorously cross-examined Dr.

O'Quin about his findings and failure to conduct a third examination.  II Trial Transcript at

pp. 356-60; *see also* III Trial Transcript at pp. 389-92 (using Dr. Lowen's letter during

closing arguments to undermine Dr. O'Quin's testimony).

Mr. Van Dusen speculates that Dr. Lowen's testimony might have helped, but her

testimony would have been cumulative.  As a result, the Petitioner cannot maintain a claim

of ineffective assistance of counsel based on his attorney's failure to call this witness. *See*,

*e.g.*, *Griffin v. West*, 791 F.2d 1578, 1581 (10th Cir. 1986) (rejecting a petitioner's ineffective

assistance claim based on a failure to call a witness whose testimony would have been

cumulative).

V.      Alleged Failure to Effectively Cross-Examine Witnesses

Mr. Van Dusen also alleges that his trial attorney was inadequately prepared, resulting

in an inability to effectively cross-examine witnesses.  Petitioner's Brief in Support at pp. 11-

12.  In particular, Mr. Van Dusen claims that his attorney had failed to pursue a logical

strategy of defense or draw the jury's attention to the "gaps" in the State's case. *Id.* at pp.

12-13.  The Petitioner's allegation is belied by the record.

Mr. Box cross-examined all of the State's witnesses, beginning with the social worker.

With this witness, the trial attorney drew attention to:

- the possibility of coercion,

- the social worker's failure to record or keep the notes of the interview, and

- B.S.'s initial normal physical findings.

II Trial Transcript at pp. 241-52, 254-55.

When B.S. testified, Mr. Box used his cross-examination to suggest fabrication of the

allegations because the girl had been in trouble and did not want her mother to marry Mr.

Van Dusen.  II Trial Transcript at pp. 283-86; *see also supra* p. 10 n.15.

In his cross-examination of Deborah Coffey, Mr. Van Dusen's attorney highlighted:

- movement between rooms of the blanket with the Petitioner's DNA,[20]

- characterization of B.S. as a "volatile" child, and

- the absence of signs involving sexual abuse.

II Trial Transcript at pp. 295-99.

With the forensic witnesses, Mr. Box used his cross-examination to:

- suggest that the Petitioner's DNA could have transferred from one blanket to
  another, and

---

[20]     This testimony suggested that the Petitioner's semen could have been left on the blanket
from a consensual sexual encounter with Ms. Coffey in her bedroom.  *See infra* p. 16.

- emphasize that while the blanket contained the DNA from two people, B.S. had been excluded.

II Trial Transcript at pp. 322-26, 338-40.

Finally, in cross-examining Dr. O'Quin, Mr. Box pointed out that:

- Dr. Lowen had failed to conduct a third physical examination, and

- B.S.'s anal examination had been normal despite the allegation of sodomy taking place only two days earlier.

II Trial Transcript at pp. 355-63.

Mr. Box performed reasonably when he cross-examined witnesses, and the Petitioner's claims to the contrary are invalid.

VI.    Alleged Stipulation to and Emphasis of Damaging Evidence

Mr. Box stipulated that the seminal fluid on the blanket belonged to Mr. Van Dusen. II Trial Transcript at p. 335.  Liberally construed, the petition suggests that the stipulation served only to emphasize damaging evidence and constituted ineffective assistance of counsel.  Petitioner's Brief in Support at pp. 12-13.  This claim is invalid because the State could have proven that the seminal fluid was Mr. Van Dusen's even in the absence of a stipulation.  Indeed, even following the stipulation, a forensic witness testified that "the DNA profile [he] obtained [from the blanket] . . . matche[d] the DNA profile . . . from the known swab from Jason Vandusen . . . ."  II Trial Transcript at p. 336.  State's Exhibit 12 confirmed this testimony.  *See* Exhibits to Transcript, State's Exhibit 12 at pp. 1-2.  Mr. Box's stipulation did not constitute ineffective assistance in light of the availability of the State's

proof. *See Hooker v. Mullin*, 293 F.3d 1232, 1246-47 (10th Cir. 2002) (stipulation to evidence did not constitute ineffective assistance of counsel when the State had evidence to prove the fact).

VII.   Alleged Failure to Object to Prosecutorial Misconduct

Finally, the Petitioner alleges that Mr. Box had failed to object to prosecutorial misconduct. Petitioner's Brief in Support at p. 14. The allegations do not support habeas relief.

In part, Mr. Van Dusen complains of a failure to object to "blatant statements about pardon and parole during sentencing." *Id.*  But Mr. Van Dusen asserted the same theory to the OCCA on direct appeal, which agreed and reduced the sentences to 30 years on both counts. *See supra* p. 3.  If Mr. Box had objected at trial, the judge could not have granted greater relief than Mr. Van Dusen ultimately obtained in the OCCA when confronted with the same allegation. *See State v. Blevins*, 825 P.2d 270, 271 (Okla. Crim. App. 1992) ("As to issues pertaining to criminal law, holdings and rulings of [the OCCA] are binding on all lower courts of this State."). Thus, Mr. Van Dusen cannot show prejudice from the absence of a trial objection involving the prosecutor's reference to parole.

The Petitioner also alleges ineffective legal representation based on the failure to object to prosecutorial misconduct involving:

- statements in *voir dire* that a conviction could be proper without incriminating evidence,

- use of false evidence and unadjudicated offenses, and

- invocation of societal alarm.

Petitioner's Brief in Support at p. 14.

But as discussed below, these alleged instances of misconduct did not deprive the Petitioner of a fundamentally fair trial. *See infra* pp. 20-30. *A fortiori*, Mr. Van Dusen cannot establish prejudice from the trial attorney's alleged lack of objections. *See Miller v. Mullin*, 354 F.3d 1288, 1296 & 1299 (10th Cir. 2004) (*per curiam*);[21] *see also Massingale v. Cody*, 61 F.3d 916, 1995 WL 434832, Westlaw op. at 1 (10th Cir. July 25, 1995) (unpublished op.) ("[b]ecause there was no error committed by allowing evidence of [the habeas petitioner's] prior record at the sentencing phase of his trial before the jury, it follows *a fortiori* that trial counsel was not ineffective in failing to exclude this evidence" (citation omitted)).

VIII.   <u>Summary</u>

Mr. Van Dusen has not demonstrated deficiency or prejudice in Mr. Box's legal representation. As a result, the Court should reject the Petitioner's theories involving ineffective assistance of trial counsel.

---

[21]   In *Miller v. Mullin*, a petitioner sought habeas relief based in part on the prosecutor's use of transparencies and defense counsel's failure to object. *See Miller v. Mullin*, 354 F.3d at 1293-95, 1297. In upholding the denial of habeas relief, the Tenth Circuit Court of Appeals held that the state appellate court had reasonably applied federal law in holding that use of the transparencies did not constitute plain error. *Id.* at 1296. Because the transparencies did not involve plain error, the petitioner could not establish a reasonable probability of acquittal if his attorney had lodged a timely objection. *Id.* at 1299.

PROSECUTORIAL MISCONDUCT

In the OCCA and the habeas petition, Mr. Van Dusen alleged prosecutorial misconduct.

On direct appeal, the OCCA agreed with Mr. Van Dusen that the prosecutor had improperly commented on the possibility of parole.  OCCA Opinion on Direct Appeal at pp. 1-2.  As a remedy, the appellate court modified the Petitioner's sentences to 30 years imprisonment on each count.  *Id.* at p. 2; *see also supra* p. 3.  Due to its decision to modify the sentence, the OCCA did not specifically address Mr. Van Dusen's concern about societal alarm.  OCCA Opinion on Direct Appeal at p. 2.

In the present action, Mr. Van Dusen claims that the prosecutor had:

- used *voir dire* to make jurors believe that they could convict without evidence,

- offered false evidence,

- suppressed exculpatory evidence,

- made personal attacks,

- degraded the Petitioner while commenting on "unadjudicated crimes and bad acts," and

- incited societal alarm.

Petitioner's Brief in Support at pp. 14, 16-24.  The Court should reject these claims.

I.    Standard for Habeas Relief on Claims Involving Prosecutorial Misconduct

In considering a habeas claim involving prosecutorial misconduct, the Court must determine whether a constitutional violation has taken place "which so infected the trial with

unfairness as to make the resulting conviction a denial of due process." *Fero v. Kerby*, 39

F.3d 1462, 1473 (10th Cir. 1994) (citation omitted).  If a prosecutor has acted improperly,

"the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of

the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982) (citations omitted).   In

conducting this inquiry, the Court should view the prosecutor's statements in context,

considering "whether the prosecutor's statements plausibly 'could have tipped the scales in

favor of the prosecution.'" *Fero v. Kerby*, 39 F.3d at 1474 (quoting *Hopkinson v. Shillinger*,

866 F.2d 1185 (10th Cir. 1989)).

II.     The Prosecutor's Alleged Suggestion to Potential Jurors that They Could Convict
        Without Evidence

Mr. Van Dusen alleges prosecutorial misconduct during *voir dire*.  Petitioner's Brief

in Support at pp. 16-17.  According to Mr. Van Dusen, the prosecutor misled the jurors by:

- asking them to convict without witnesses even though two witnesses allegedly
  existed, and

- requesting a conviction without video/audio evidence even though the
  prosecutor could have taped the interviews with the victim.

*Id.* at p. 16.  The Petitioner's claim is baseless.

In the excerpt at issue, the prosecutor did not suggest anything.  Instead, he merely

asked whether any of the venirepersons would require a confession, eyewitnesses other than

the victim, or videotape of the offense.  I Transcript of Jury Trial at pp. 62-63, *State v.*

*Vandusen*, Case No. CF-2002-55 (Blaine Co. Dist. Ct. Sept. 8, 2003).[22]

---

[22]     The prosecutor asked:

Mr. Van Dusen's complaint about the presence of witnesses is self-defeating. At trial, his attorney argued that the jury should acquit because of the prosecutor's failure to supply "validation" of B.S.'s allegations. III Trial Transcript at p. 394. In *voir dire*, the prosecutor merely asked whether the venirepersons would require eyewitness "validation" of the victim's allegations. *See supra* pp. 21-22 n.22.

The Petitioner also complains that the prosecutor had asked the venirepersons to convict without a video or audio recording even though one could have been made. *See supra* p. 21. This argument is self-defeating. The prosecution had no constitutional duty to ensure a recording of Ms. Grove's interview with B.S. *See Bullock v. Carver*, 297 F.3d

---

Okay. Is there anybody here who believes that a confession is required before a person can be convicted beyond a reasonable doubt? You know, we see lots of times in these shows that people have confessions and they've got certain things. Does anybody believe that that's necessary for me to prove my case? Is anybody going to require me to prove that in this case?

Is there anybody that believes that there must be an eyewitness to the crime besides the victim to convict beyond a reasonable doubt?

And again, I want to encourage all of you to be honest with me right now at this point. If there's something there, some kind of an issue that you have with these questions, we need to be discussing them now. Anybody that would require there to be another eyewitness besides the victim?

(No response.)

[Prosecutor]: Anyone believe the Defendant must be caught on videotape to be convicted beyond a reasonable doubt?

(No response.)

1036, 1041, 1056-57 (10th Cir. 2002).[23]  And even if such a duty did exist, the Petitioner does not allege a violation.  Instead, he suggests only that the prosecutor had asked for a conviction without a recording when one could have been made.  The suggestion is based on a misreading of the *voir dire*.  The prosecutor simply asked if the venirepersons would require video evidence to convict.  He did not:

- ask the venirepersons to convict without such evidence, or

- suggest that Ms. Grove would have been unable to record the interview.

## III.    The Prosecutor's Alleged Use of False Evidence

According to the Petitioner, the physical evidence did not support the testimony of Kelli Grove and Dr. O'Quin.  Petitioner's Brief in Support at pp. 17-19.  Thus, Mr. Van Dusen accuses the State of offering false evidence.  *Id.*  The Court should reject this claim.

---

[23]    In *Bullock v. Carver*, the petitioner was convicted on charges involving sexual abuse and sodomy upon a child.  *See Bullock v. Carver*, 297 F.3d at 1040.  A social worker interviewed multiple children, but generally did not record them.  *See id.* at 1041.  The petitioner sought habeas relief based on the social worker's failure to record the interviews.  *See id.* at 1055-56.  The Tenth Circuit Court of Appeals rejected the claim because the petitioner could not show that the social worker:

- had acted in bad faith, or

- had acted as an agent of the police when she conducted the interviews.

*Id.* at 1056-57.

In the present action, Mr. Van Dusen similarly lacks evidence of:

- bad faith by Ms. Grove, or

- an agency relationship between Ms. Grove and law enforcement at the time of the interview with B.S.

A conviction obtained through perjury results in a due process violation if the prosecutor had knowingly solicited the false testimony. *See United States v. Wolny*, 133 F.3d 758, 762 (10th Cir. 1998). For a constitutional violation, the petitioner must show: "(1) that the testimony was false, (2) that it was material, and (3) that it was knowingly and intentionally used by the government to obtain a conviction." *Id.*

Mr. Van Dusen cannot prove that the testimony was false. For example, the Petitioner alleges perjury because:

- Kelli Grove had stated that B.S. wanted to talk outside, but it took two hours before the victim made her allegation;

- Ms. Grove said she did not record the interview because she had not known there would be allegations of sexual abuse, but she knew that the Petitioner lived in the home;

- the social worker testified that the Petitioner had wrapped B.S. in a blanket, but the child's DNA was not found there; and

- Dr. O'Quin's testimony had to be false because a child "violently assaulted and raped" would have had bruising, swelling, tearing, or contusions.

Petitioner's Brief in Support at pp. 17, 19.

The Petitioner's examples illustrate his disbelief in the testimony, but they do not demonstrate perjury. Four factors are pertinent:

- Ms. Grove explained that B.S.'s emotional state lengthened the interview,[24]

---

[24]    II Trial Transcript at pp. 228, 250.

- there is no evidence that the social worker should have anticipated allegations of sexual abuse by B.S.,[25]

- absence of a female secretion by B.S. does not negate proof that she had been wrapped in the blanket, and

- the testimony does not reflect violence in the sexual encounters,[26] and Dr. O'Quin testified that his medical findings were consistent with anal penetration.[27]

Thus, the Petitioner's alleged "facts" do not reflect perjury in the testimony of Kelli Grove or Dr. O'Quin.  Based on the "absolute lack of evidence to show . . . the falsity of [the] testimony[,]" the Court should reject habeas relief.  *United States v. Caballero*, 277 F.3d 1235, 1243 (10th Cir. 2002) (rejecting a claim of prosecutorial misconduct based on the offering of perjured testimony because the defendant had provided no evidence of falsity in the evidence).

---

[25]     Mr. Van Dusen asserts that Ms. Grove "[knew] about Petitioner's past" and could not have been surprised by the sexual assault allegation.  Reply to the State's Response at p. 2 (May 18, 2006).  The Petitioner does not explain the significance of his "past."  However, Mr. Van Dusen's prison packet indicates that he was convicted of rape and forcible anal sodomy in 1995.  *See* Exhibits to Transcript, State's Exhibit 15 at p. 11.  The Petitioner has not provided any proof to suggest that Ms. Grove was aware of the prior conviction.

[26]     *See* Trial Transcript, *passim*.

[27]     Dr. O'Quin explained:

        The anal region can accommodate fairly large diameter objects, especially if they're introduced slowly, gently, with lubrication.  Even if there is tearing from the stretching that area tends to heal quite rapidly and often without scarring.  So the normal findings do not rule out the victim's story.

II Trial Transcript at p. 353.

IV.    <u>The Prosecutor's Alleged Suppression of Exculpatory Evidence</u>

The Petitioner claims that the State had withheld exculpatory evidence consisting of:

- the absence of B.S.'s DNA on either blanket,

- the identity of the person who had left DNA on the blanket, and

- information concerning immunity granted to witnesses.

Petitioner's Brief in Support at pp. 18, 21-24. These claims do not warrant federal habeas relief.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. at 87. To prevail under this theory, the Petitioner "must demonstrate that '( 1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense.'" *Scott v. Mullin*, 303 F.3d 1222, 1230 (10th Cir. 2002) (citation omitted). The habeas claim fails because of the Petitioner's inability to prove the first element, suppression of evidence.

According to the Petitioner, the State withheld evidence that B.S.'s DNA had not been found on the blankets. *See supra* p. 26. However, the Petitioner does not present any evidence to show suppression of this evidence. The State presented evidence involving two blankets. On one, the State elicited testimony that no seminal fluid had been detected. II

Trial Transcript at p. 320.  On the other blanket, Mr. Van Dusen stipulated that his seminal fluid had been present.  *Id.* at p. 335; *see supra* p. 17.  But the O.S.B.I. report expressly excluded the victim as a donor.  Exhibits to Transcript, State's Exhibit 12.  Based on this report, a criminalist testified for the State that B.S. had not contributed any D.N.A. to the mixture found on the blanket.  II Trial Transcript at pp. 339-40.  None of the evidence suggests that this fact had been withheld from defense counsel before the trial.

The Petitioner's second example is belied by the record.  Dr. George Mango testified that he had only compared the DNA samples with swabs from Mr. Van Dusen and B.S.  II Trial Transcript at p. 331; *see also* Exhibits to Transcript, State's Exhibit 12.  There is no evidence to suggest that a State official had known the source of the second secretion.  *See*, *e.g.*, *Godlock v. Fatkin*, 84 Fed. Appx. 24, 29 (10th Cir. Dec. 16, 2003) (unpublished op.) (rejecting a habeas claim based on withholding of a medical report because the petitioner had only "conclusory allegations and speculation" about the contents).[28]

---

[28]    The Petitioner asserts two different arguments with respect to his belief that the prosecutor had known the second source of the DNA.  Both arguments are invalid.

First, he claims that "with additional fact finding," he could show that the prosecutor had known that Debbie Coffey was the second source of DNA on the blanket.  Petitioner's Brief in Support at p. 23 (stating that the prosecution "knew the identity of the second DNA as Debbie Coffey"); Reply to the State's Response at p. 8 (May 18, 2006) (requesting "additional fact finding" to prove knowledge of the identity of the DNA source).  But the Petitioner's conclusory assertion does not justify discovery to uncover evidence of the prosecution's knowledge.  *See* Rule 6(a), Rules Governing Section 2254 Cases in the United States District Courts (requiring "good cause" for discovery); *see also Strickler v. Greene*, 527 U.S. 263, 286 (1999) ("Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review.").

Second, the Petitioner argues that the State had a "duty to find [the] identity of second DNA

Finally, the Petitioner fails to present any evidence to suggest an offer of immunity to any of the State's witnesses. *See United States v. Edwards*, 442 F.3d 258, 264-67 (5th Cir. 2006) (rejecting a *Brady* claim based on speculation involving a grant of immunity for a prosecution witness).

Mr. Van Dusen alleges suppression of material evidence, but he has not demonstrated actual withholding of any evidence. Thus, the Court should reject the Petitioner's claim for habeas relief. *See Foster v. Ward*, 182 F.3d 1177, 1192 (10th Cir. 1999) (upholding denial of a habeas claim based on the absence of evidence that the prosecutor had withheld "material, exculpatory evidence").

V.     The Prosecutor's Alleged Attack on the Petitioner and Comments on "Unadjudicated Crimes and Bad Acts"

Mr. Van Dusen also claims:

- degradation through an accusation that he had attempted to isolate the family,

- presentation of testimony involving favoritism toward B.S., and

- comments on unadjudicated "bad acts" through introduction of a "paddle" bearing B.S.'s name.

Petitioner's Brief in Support at pp. 19-21. The Petitioner's allegations do not justify federal habeas relief.

---

on" the blanket. Petitioner's Brief in Support at p. 23. But "the police do not have a constitutional duty to perform any particular tests." *Arizona v. Youngblood*, 488 U.S. 51, 59 (1988); *see also Riggs v. Williams*, 87 Fed. Appx. 103, 106 (10th Cir. Jan. 21, 2004) (unpublished op.) (rejecting a habeas claim in light of the petitioner's failure to offer any "legal authority to support his claim that the police had a duty to test [his] shoes" for the presence of blood).

Under Oklahoma law, evidence is relevant if it bears a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Okla. Stat. tit. 12 § 2401 (2001). Relevant evidence is subject to exclusion only if it is unfairly prejudicial. *See* Okla. Stat. tit. 12 § 2403 (2001).

The Petitioner has elsewhere suggested coercion of B.S. during her lengthy interview with the social worker. *See supra* p. 10 n.15, p. 24. To rebut this theory, the State theorized that B.S. had been scared and intimidated by Mr. Van Dusen. *See* III Trial Transcript at pp. 403-404, 411. Thus, evidence of B.S.'s isolation and punishment could help to explain her failure to disclose the sexual encounters and the need for a lengthy interview.[29] In light of the relevance of the testimony, the potential prejudice to Mr. Van Dusen did not require exclusion under state law. *See*, *e.g.*, *Webb v. State*, 684 P.2d 1208, 1210 (Okla. Crim. App. 1984) (evidence tending to show that the fact that the child did not fabricate the sexual abuse allegation was relevant and not unduly prejudicial). *A fortiori*, the Petitioner cannot show a due process violation through introduction of the evidence.

---

[29]     *See United States v. Powers*, 59 F.3d 1460, 1464-65 (4th Cir. 1995) (concluding that "evidence of [the defendant's] violence against [the child-victim] and her family members was admissible to explain [the child's] submission to the acts and her delay in reporting the sexual abuse" (citations omitted)); *United States v. Birdsbill*, 97 Fed. Appx. 721, 723 (9th Cir. May 4, 2004) (unpublished op.) (stating that testimony about violence toward a third-party was admissible to show why the alleged child-victim had remained silent after being abused).

VI.     The Prosecutor's Alleged Effort to Incite Societal Alarm

Finally, Mr. Van Dusen claims prosecutorial misconduct based on the prosecutor's attempt to "inflame the passion and prejudices of the jury" and "incit[e] societal alarm." Petitioner's Brief in Support at pp. 20-21.  But Mr. Van Dusen supplies no examples and the Court cannot guess about which statements are being challenged.  *See Daniel v. Wyoming Department of Corrections State Penitentiary Warden*, 208 F.3d 225, 2000 WL 216616, Westlaw op. at 1 (10th Cir. Feb. 23, 2000) (unpublished op.) ("The allegation of prosecutorial misconduct lacks specificity, and therefore amounts to a conclusory argument that cannot suffice to demonstrate a violation of Daniel's constitutional right to a fair trial.").

VII.    Summary

The Petitioner has not identified any prosecutorial actions "which so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Supra* pp. 20-21.  As a result, the Court should deny habeas relief on this claim.

INSUFFICIENCY OF THE EVIDENCE
AND FAILURE TO CLARIFY INSTRUCTIONS

In his fourth ground for relief, Mr. Van Dusen alleges insufficiency of the evidence and a failure to clarify a jury instruction.  Petitioner's Brief in Support at pp. 25-31.  These claims should be denied.

I.      Insufficiency of the Evidence

According to the Petitioner, the witnesses were unbelievable.  Petitioner's Brief in Support at pp. 25-31.  But sufficient evidence existed for a reasonable jury to reach a contrary conclusion.

A.      Standard for Sufficiency of the Evidence

When the sufficiency of evidence is challenged in a habeas action, the federal district court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  This review is "sharply limited," and federal courts are not to weigh conflicting evidence or consider the credibility of witnesses. *See Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996).  "The inquiry is based upon the entire record and the reasoning process actually used by the trier of fact, known or not, is not considered." *Torres v. Mullin*, 317 F. 3d 1145, 1151 (10th Cir. 2003) (citation omitted).

The standard for sufficiency of the evidence "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson v. Virginia*, 443 U.S. 307, 324 & n.16 (1979).  Therefore, the Court must consider Oklahoma law on this claim.

B.      Elements of Rape of a Child and Rape by Instrumentation

In Oklahoma, the elements of rape of a child are:

●      sexual intercourse,

31

- with a person who was not the spouse of the defendant,

- where the defendant was over the age of eighteen and the victim was under the age of fourteen.

*See* Okla. Stat. tit. 21 § 1114(A)(1) (2001); OUJI-CR 4-120 (2nd ed.).

The elements of rape by instrumentation are:

- penetration of the anus or vagina,

- of a minor under the age of fourteen,

- by a part of the human body other than the penis.

*See* Okla. Stat. tit. 21 § 1111.1 (2001); OUJI-CR 4-126 (2nd ed.).  "Any sexual penetration, however slight, is sufficient to complete the crime of rape by instrumentation."  OUJI-CR 4-126 (2nd ed.).

C.    Evidence at Trial

According to a social worker, B.S. said that Mr. Van Dusen had touched her "vagina area" and had "inserted his finger into her vagina."  II Trial Transcript at p. 228.  B.S. showed the incident on a diagram[30] and testified that the Petitioner had been touching her vaginal area and that "it hurt."[31]  The medical reports showed that B.S. had peripheral

---

[30]    II Trial Transcript at p. 231; Exhibits to Transcript, State's Exhibit 6 (marking the child's vagina with the word "fingers").

[31]    II Trial Transcript at p. 235.

"blunting of the edges of the hymen," which was consistent with "repeated [vaginal] penetration with a finger."  *Id.* at p. 350.

At trial, B.S. testified that the Petitioner had also "grabbed [her] ankles" and "put something to [her] bottom."  *Id.* at pp. 277-78.  On a diagram, the child indicated that Mr. Van Dusen had inserted his "lower private parts" into her "bottom."  *Id.* at pp. 278, 280; *see also* Exhibits to Transcript, State's Exhibit 7 (circling the adult male's penis and labeling it "[B.S.'s] but[t]").  B.S. also described the same scenario to the social worker.  II Trial Transcript at pp. 232-35.

Ms. Coffey testified that B.S. was under the age of fourteen and was not married to the Petitioner.  *Id.* at pp. 288, 290.

Mr. Van Dusen disbelieves much of the testimony and points to various inconsistencies in the evidence.  Petitioner's Brief in Support at pp. 25-31.  But on habeas review, the federal court must presume "that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Jackson v. Virginia*, 443 U.S. 307, 326 (1979); *see supra* p. 31.  Based on the testimony, the fact-finder could reasonably conclude that the Petitioner had penetrated B.S.'s vagina with his finger and her anus with his penis.  Thus, sufficient evidence existed to support the convictions for rape of a child and rape by instrumentation.

II.     Failure to Clarify a Jury Instruction

In count two, Mr. Van Dusen was charged with rape by instrumentation.  *See supra* p. 2.  The trial court instructed the jury that a conviction required "penetration" and that "[a]ny sexual penetration, however slight, is sufficient to complete the crime of rape."  Jury Instruction No. 11, *State v. Vandusen*, Case No. CF-2002-55 (Blaine Co. Dist. Ct. Sept. 10, 2003).[32]

During deliberations, the jurors sent a note seeking clarification of the phrase "however slight penetration."  Note from Jury, *State v. Vandusen*, Case No. CF-2002-55 (Blaine Co. Dist. Ct. file-stamped Sept. 10, 2003).[33]  The trial court responded:

> I have received your note asking for clarification on the definition of "however slight penetration" on count number 2.
>
> You have received all of the instructions necessary for rendering a verdict.  Please resume your deliberations until you reach a verdict.

Response to Note from Jury, *State v. Vandusen*, Case No. CF-2002-55 (Blaine Co. Dist. Ct. file-stamped Sept. 10, 2003).[34]

The Petitioner argues that the trial court's failure to clarify the instruction had "unconstitutionally shifted [the] burden of persuasion to petitioner proving innocence beyond

---

[32]     The Court may take judicial notice of the state court record.  *See St. Louis Baptist Temple, Inc. v. Federal Deposit Insurance Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (discussing judicial notice of state court records).

[33]     *See supra* p. 34 n.32.

[34]     *See supra* p. 34 n.32.

34

a reasonable doubt." Petitioner's Brief in Support at p. 29. The Tenth Circuit Court of Appeals rejected similar arguments in *United States v. Arias-Santos*, 39 F.3d 1070 (10th Cir. 1994), and *United States v. Espinoza*, 338 F.3d 1140 (10th Cir. 2003).

In *United States v. Arias-Santos*, 39 F.3d 1070 (10th Cir. 1994), the defendant had been charged with possession with intent to distribute. *See United States v. Arias-Santos*, 39 F.3d at 1075. The jury sent a note seeking clarification of the phrase "knowingly, intentionally and unlawfully possessed with intent to distribute." *Id.* In response, the trial court simply reread the original instruction to the jury. *See id.*

The Tenth Circuit Court of Appeals recognized that "'[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy.'" *Id.* (quoting *Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946)). However, the defendant was not challenging the instruction as an incorrect statement of the law *per se*. Instead, he argued that the court had not answered the jury's question and clarified the instruction. *See id.* at 1075-76. The Tenth Circuit Court of Appeals noted that the jury had not returned with further questions, which suggested alleviation of any earlier confusion. *Id.* at 1076. Thus, the appeals court found no error in the trial court's refusal to clarify the instruction. *See id.*

A similar issue also arose in *United States v. Espinoza*, 338 F.3d 1140 (10th Cir. 2003). In *Espinoza*, the jury sent the trial court a note seeking clarification of the instructions. *See United States v. Espinoza*, 338 F.3d at 1145. The trial court gave a simple "yes" answer to one of the jury's questions and referred the jury to the instructions. *Id.* at 1146. As in *Arias-Santos*, the defendant did not challenge the correctness of the instructions.

35

*See id.*; *see also supra* pp. 34-35.  Instead, the defendant argued that the trial court should have provided greater clarification for the jury.  *United States v. Espinoza*, 338 F.3d at 1146.

The Tenth Circuit Court of Appeals stated that a trial judge should clear away jury difficulties "with concrete accuracy." *Id.* (citation omitted).  Nevertheless, the court rejected the defendant's argument, holding:

> But that does not mean that the trial judge must always reinvent the wheel, crafting a new instruction when the original instructions are sufficiently clear.  The judge may be properly concerned that a new instruction may itself introduce error or distort the instructions as a whole by overemphasizing a particular instruction.  Here, after answering the jury's one explicit question, the judge reminded the jury that it must consider the answer in light of the other instructions that had previously been given.  In doing so, the judge referred the jury to instructions that address the very matters of concern to [d]efendant-instructions on the elements of the crimes charged . . . .  [The] [d]efendant does not contest the correctness of those previously given instructions or suggest that they were confusing.

*Id.*

*Arias-Santos* and *Espinoza* are applicable here.  The jury might initially have been confused about the phrase "however slight penetration."  But three factors combine here to prevent habeas relief:

- The trial court directed the jury to rely on the instructions;

- Mr. Van Dusen does not challenge the correctness of the previously given instructions; and

- the lack of further questions suggests that further clarification was unnecessary.

For these reasons, the habeas claim should be rejected.

## ACCUMULATED ERRORS

In his fifth ground for relief, the Petitioner alleges the denial of his constitutional rights through the "accumulation of error[s] . . . ." Petitioner's Brief in Support at pp. 32-33. But Mr. Van Dusen is not entitled to federal habeas relief based on cumulative error.

"A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Miller v. Mullin*, 354 F.3d 1288, 1301 (10th Cir. 2004) (*per curiam*).

To count, each error must involve a violation of the federal constitution rather than state law. *See Parker v. Scott*, 394 F.3d 1302, 1327 (10th Cir. 2005) ("Because we find no single constitutional error, we also must reject Parker's argument that cumulative error resulted."); *Hain v. Gibson*, 287 F.3d 1224, 1244 (10th Cir. 2002) ("Although Hain has asserted a cumulative error argument, it is without merit since he has failed to identify multiple constitutional violations arising at trial." (citation omitted)). "'Cumulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors.'" *Moore v. Gibson*, 195 F.3d 1152, 1175 (10th Cir. 1999) (citation omitted).

The Petitioner has not shown two or more constitutional errors.  *See supra* pp. 4-37; *infra* p. 38.  Thus, the Court should decline to award habeas relief based on the accumulation of error.

## INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his sixth ground for relief, the Petitioner alleges that his appellate counsel was ineffective for failure to challenge "these clearly meritorious issues."  Petitioner's Brief in Support at pp. 34-37.  But Mr. Van Dusen has not shown entitlement to relief under the federal constitution and he has not identified any issues of state law erroneously omitted on direct appeal.  *See supra* pp. 4-37.  As a result, the Court should also deny the Petitioner's claim involving shortcomings of the attorney on appeal.  *See Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999) (if an omitted issue lacks merit, counsel's failure to raise it on appeal does not reflect ineffective assistance).

## REQUEST FOR AN EVIDENTIARY HEARING

Mr. Van Dusen requests an evidentiary hearing to "fully develop his grounds should the Court deem this would further the cause of justice."  Petitioner's Brief in Support at p. 37;[35] *see* Reply to the State's Response at p. 10 (May 18, 2006).  His request should be denied.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") restricts the availability of evidentiary hearings when a habeas petitioner fails to develop the factual basis

---

[35]     At the page cited, Mr. Van Dusen supplied a separate document entitled "Request Evidentiary Hearing."  But the Petitioner did not file the document as a separate motion.

of his habeas claim in state court.  *See* 28 U.S. C. § 2254(e)(2) (2000).  But when a petitioner

diligently attempts to develop the facts in state court, the federal court applies the standard

in effect prior to adoption of the AEDPA.  *See Bland v. Sirmons*, 459 F.3d 999, 1033 (10th

Cir. 2006).

In state court, Mr. Van Dusen acted with diligence to develop the underlying facts.

*See* Petitioner's Points and Autorities [sic] a Supplement to Petitioners [sic] Post Convition

[sic] Writ of Habeas Corpus 12 Okla. St. Ann 1342 at p. 24, *Van Dusen v. Mullin*, Case No.

CV-2005-170 (Blaine Co. Dist. Ct. certified Nov. 2, 2005) (seeking an evidentiary hearing);

*see also Bland v. Sirmons*, 459 F.3d at 1033 ("By seeking an evidentiary hearing in state

court, [the petitioner] diligently sought to develop the factual basis of his habeas petition.").

To justify an evidentiary hearing under the pre-AEDPA standard, the Petitioner must:

- show the presence of a factual dispute,[36] and

- make allegations in the petition that would justify habeas relief  "if true and if
  not contravened by the existing factual record . . . ."[37]

Mr. Van Dusen's factual allegations must be "'specific and particularized, not general or

conclusory.'"  *Anderson v. Attorney General*, 425 F.3d 853, 858-59 (10th Cir. 2005) (citation

omitted).

---

[36]     *Fox v. Ward*, 200 F.3d 1286, 1302 (10th Cir. 2000).

[37]     *Bland v. Sirmons*, 459 F.3d at 1033 (citation omitted).

The Petitioner is not entitled to an evidentiary hearing under this standard. Most of Mr. Van Dusen's allegations would not entitle him to habeas relief even with proof. These claims include allegations that:

- trial counsel had waived the preliminary hearing and opening statement, failed to adequately investigate and present the desired theory of defense, failed to call relevant lay witnesses or a medical expert, stipulated to and emphasized damaging evidence, and failed to object to prosecutorial misconduct;

- the prosecutor had used *voir dire* to make jurors believe that they could convict without evidence, offered false evidence, made personal attacks, degraded the Petitioner while commenting on "unadjudicated crimes and bad acts," and incited societal alarm;

- the evidence was insufficient and instructions were not clarified;

- cumulative error denied the Petitioner a fair trial; and

- appellate counsel was ineffective.

*See supra* pp. 7-12, 14-15, 17-25, 28-37; *see also Bland v. Sirmons*, 459 F.3d at 1033 (the petitioner was not entitled to an evidentiary hearing because the evidence to be presented would not have provided a meritorious habeas claim).

Mr. Van Dusen also alleges that trial counsel had failed to effectively cross-examine witnesses. *See supra* pp. 15-17. But an evidentiary hearing is unnecessary on this issue because it can be resolved on the existing factual record. *See supra* pp. 15-17; *see also Anderson v. Attorney General*, 425 F.3d at 859 ("an evidentiary hearing is unnecessary if the claim can be resolved on the record").

Finally, the Petitioner claims that trial counsel had failed to call a psychologist and that the State had suppressed exculpatory evidence. *See supra* pp. 12-13, 26-28. These claims were rejected in part based on Mr. Van Dusen's lack of evidence. *See supra* pp. 12-13 (lack of evidence that a psychologist would have testified regarding coercion of B.S.), pp. 26-28 (lack of evidence that State had suppressed evidence regarding the absence of B.S.'s DNA on a blanket). But the Petitioner requested an evidentiary hearing simply to "fully develop his grounds." *Supra* p. 38. This assertion is too vague, as it fails to identify the evidence "that would alter [the Court's] analysis." *Parker v. Scott*, 394 F.3d 1302, 1325 (10th Cir. 2005); *see Atkins v. State*, 386 F.2d 819, 820 (10th Cir. 1967) (*per curiam*) ("Here we have nothing but generalities and conclusions which are insufficient to entitle appellant to an evidentiary hearing.").

For these reasons, the Court should reject Mr. Van Dusen's request for an evidentiary hearing.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the reasons discussed above, the undersigned recommends denial of the requests for an evidentiary hearing and issuance of a writ of habeas corpus.

The Petitioner can object to this report and recommendation. To do so, Mr. Van Dusen must file an objection with the Clerk of this Court. The deadline for objections is November 27, 2006. *See* W.D. Okla. LCvR 72.1(a). The failure to timely object would foreclose appellate review of the suggested rulings. *See Moore v. United States*, 950 F.2d

656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996)

("Issues raised for the first time in objections to the magistrate judge's recommendation are

deemed waived.").

STATUS OF THE REFERRAL

The referral is terminated.

Entered this 7th day of November, 2006.


*Robert E. Bacharach*

Robert E. Bacharach
United States Magistrate Judge